Nicholas Ranallo, Attorney at Law (SBN #275016)
371 Dogwood Way
Boulder Creek, CA 95006
Phone: (831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com
Attorney for ISP Subscribers
(IP Addresses 96.41.117.43 & 71.95.203.190)


Brett L. Gibbs, Esq. (SBN 215000)
Of Counsel to Prenda Law Inc.
38 Miller avenue, #263
Mill Valley, CA  94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff,*
*Pacific Century International, Ltd..*


## UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| CP PRODUCTIONS, INC | Case No.: 2:12-CV-00616-WBS-JFM |
| Plaintiff, | Magistrate Judge John F. Moulds |
| vs. | Hearing Date: July 5, 2012 |
| JOHN DOE,<br>            Defendant | JOINT STATEMENT RE: DISCOVERY DISPUTE |

Plaintiff is the exclusive holder of the relevant rights with respect to the copyrighted creative work that is the subject of its Complaint in this matter.  John Doe is the only defendant in this matter at this time; he is currently unidentified.  Movants are two non-party account-holders associated with alleged "co-conspirator" IP addresses 96.41.117.43 and 71.95.203.190, respectively.  Plaintiff and Movants, through their undersigned counsel, hereby submit this Joint

Statement re: Discovery Disagreement in advance of the July 5, 2012 hearing on Movants' requests for a Protective Order and Plaintiff's opposition of such.  Both sides note that these arguments are virtually identical to those that were presented to this Court in a June 21, 2012 hearing on a similar motion by a non-party movant in *Pacific Century International, Ltd. v. Doe,* Case No. 2:11-cv-3479-KJM-JFM.

## I.  Details of the Parties Discovery Conferences

Plaintiff and Movant have engaged in two telephonic meet and confer sessions with regard to the instant motion in an attempt to resolve the discovery disputes.  Specifically, counsel for Movant and Plaintiff spoke on or around May 18, 2012, prior to the filing of the instant motion for a protective order (and two other functionally identical motions also pending before this court).  In addition, counsel for Movant and Plaintiff spoke again on June 13, 2012, regarding the discovery dispute.  Movants' and Plaintiff's counsel also recently argued a similar matter on June 21, 2012, before Judge Moulds, in Pacific Century, Ltd. v. John Doe (2:11-cv-03479-KJM-JFM) regarding substantially the same issues as those addressed herein.  The court has yet to issue a decision.

Due to the nature of the discovery disagreement, the circumstances of this case and the irreconcilable differences between the Movant and Plaintiff regarding the propriety of the discovery, as described more fully below, the respective parties were unable to resolve this disagreement without court intervention.

## II.  A Statement of the Nature of the Case

Plaintiff herein is the purported owner of the adult work that is the subject of this action. Defendant herein is a particular unidentified "John Doe" that allegedly downloaded Plaintiff's work on December 2, 211.  In addition to John Doe, this suit alludes to (but does not presently include) approximately 116 alleged "co-conspirators," including Movants herein.  Each co-conspirator is accused of downloading Plaintiff's copyrighted work sometime between November 17, 2011 and March 5, 2012.  Movants herein are alleged to have been observed on

January 9, 2012 and January 20, 2012 (each more than a month after John Doe's alleged participation).

The instant complaint was filed on March 9, 2012. On March 13, 2012, Plaintiff applied to this Court for an Ex Parte Application for early discovery, requesting the names and identifying information associated with John Doe and each of the "co-conspirators" who are alluded to in the complaint. In support of its application, Plaintiff submitted the declaration of Peter Hansmeier, who is identified as a technician for Media Copyright Group, LLC (MCG). On March 19, 2012, this Court granted Plaintiff leave to pursue the requested discovery. A copy of this order is annexed hereto as Exhibit A.

### III.  The Contention of Each Party as to Each Contested Issue

### 1.  Standing

**Movant:** Plaintiff first argues that Movant herein does not have standing to challenge the instant subpoena via a motion for a protective order. This argument is faulty for a number of reasons and simply seeks to deprive the subpoenaed individuals of any opportunity to challenge the falsehoods and misstatements contained in Plaintiff's Ex Parte Application. For the reasons outlined below, Plaintiff's argument must be rejected.

First, as noted in the original motion, a party has standing to challenge a subpoena issued to the third party when the party has a personal or proprietary interest in the information sought by the subpoena. *See Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18, 21 (D.D.C. 2005). Movant herein has a personal or proprietary interest in his address, phone number, email address, and the other identifying details sought by Plaintiff. Indeed, Congress has specifically recognized that ISP subscribers have a privacy interest in the personally identifying information kept by ISPs, and explicitly stated the same in the H.R. 98-934 at *79 (The Congress is recognizing a right of privacy in personally identifying information collected and held by a cable company..."). Indeed, 47 U.S.C. §551 specifically requires that an ISP subscriber be notified and given a chance to intervene before his identifying information is released to Plaintiff herein.

This process obviously makes no sense if a subscriber lacks standing to bring any motions to prevent the release of his information.

Plaintiff claims that the "plain language" Rule 26 prevents the issuance of a protective order because the requested discovery is not sought directly from the Movant and because Movant is not a party. Plaintiff's reliance on the "plain language" of the Federal Rules is interesting, given that the plain language of the Federal Rules would also seem to prohibit the instant "Doe" action filed by Plaintiff (Fed. R. Civ. P. 10(a) ("the title of the action should include the names of all parties.")) Plaintiff has not cited any case law that supports his interpretation of Rule 26 and Plaintiff's position is directly contrary to the position taken by other federal courts in this state.

For example, in *Coulter v. Murrell,* the Southern District of California confronted an exactly analogous situation. In that case, Ms. Shelly, a non-party, sought a protective order preventing the release of various records regarding her late husband that were being sought from a local hospital. Ms. Shelly was neither a party, nor the individual from whom the records were sought, and Plaintiff argued that Ms. Shelly therefore lacked standing. The court rejected this argument and granted a protective order preventing the release of the requested information. In doing so, the court noted specifically that:

> " Even if Ms. Shelly lacked standing to bring a motion to quash [Plaintiff's] subpoenas, she has alternatively sought a protective order. This is a remedy that is available to 'any person' who is able to establish good cause for issuance of the protective order 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...'"

*Coulter v. Murrel,* 2011 WL 666894 at *3-4 (S.D. Cal. 2011).

The Northern District has likewise recognized that a "Doe" defendant has standing to bring a motion for a protective order seeking to prevent the release of his identity. In fact, in *IO Group v. Does 1-19,*(a BitTorrent case like the instant) the court sua sponte converted a Doe's motion to quash a subpoena issued from another district to a motion for a protective order in order to properly address the merits of the Doe's argument. *IO Group v. Does,* 2010 WL

5071605 at *2 (N.D. Cal. 2010)("for purposes of judicial economy and in light of Doe #4's

consent to this forum – at least for purposes of determining his pending motions – the Court will

consider Doe #4's motion as one for a protective order.")  See also *Wells v. GC Services LP*

2007 WL 1068222 at *1(N.D. Cal. 2007)("Federal Rule of Civil Procedure 45 allocates authority

over subpoenas to the court for the district from which they are issued...However, this court

could properly address a motion for a protective order, and this court has the right to define the

scope of discovery...Therefore, the court deems Plaintiff's motion to be  a motion for a protective

order...")

It is well established that discovery in a civil case may be regulated and controlled by the

court in which the case is filed.  See, *Straily v. UBS Fin. Servs., Inc.*, No. 07-cv-884-REB-KMT,

2008 WL 5378148, at *2 (D. Colo. Dec. 23, 2008).  See Also *Static Control Components, Inc. v.*

*Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (district where case was pending had

authority to issue protective order, pursuant to its right to control general outline of discovery,

even though the particular discovery dispute arose from subpoena issued in another district)

(citing *Fincher v. Keller Indus., Inc.*, 129 F.R.D. 123, 125 (M.D.N.C. 1990)); *Rajala v. McGuire*

*Woods, LLP* 2010 WL 4683979 at *5 (D. Kan. 2010)("the Court finds the *Straily* and *Static*

*Control* decisions to be well reasoned and reflective of the majority view"); *Best Western Inc. v.*

*Doe,* 2006 WL 2091695 (D. Ariz. 2006)("Rule 45(c) does provide that subpoenas should be

enforced by the district court which issued them, but this rule does not alter the broader concept

that the district court in which an action is pending has the right and responsibility to control the

broad outline of discovery.  General discovery issues should receive uniform treatment

throughout the litigation, regardless of where the discovery is pursued")(internal quotes and

citations omitted").

This court has the authority and obligation to control discovery in the underlying action.

In furtherance of this authority, the court herein has ordered that ISP subscribers shall have 30

days to contest the subpoena in this court.  Even if Movant were generally prohibited from

seeking a protective order by the language of Rule 26 (which he is not, as shown above), this

court's discovery order nonetheless confers standing on Movant to challenge the subpoenas issued in accordance with the order.

**Plaintiff's Position:**

This issue was already fully covered at oral argument in the previous case in front of this Court. First, the cases Movants cite to are entirely inapplicable to the situation at hand. Second, Movants fail to see that, despite the distinguishable cases cited, there is a concise statement given the Federal Rules of Civil Procedure Rule 26 that clearly forbids Movants from asking for the relief requested here. The plain language of Federal Rule of Civil Procedure 26 limits the scope of who may move for a protective order. *See* Fed. R. Civ. P. 26(c) ("A *party* or any *person from whom discovery is sought* may move for a protective order ....") (emphasis added). Movants are not parties to this case as no one has yet been named or served. Further, Movants are not John Doe—the eventual Defendant in this case. (ECF No. 1-1) (listing the IP address associated with John Doe as 24.7.175.228). Nor are Movants persons from whom discovery is sought. Plaintiff sought (ECF No. 7), and was granted (ECF No. 9), discovery from ISPs. All subpoenas issued pursuant to the Court's March 19 Order (ECF No. 9) were issued to nonparty ISPs. Movants, therefore, lacks standing to move for a protective order. Proper methods exist for Movants to prevent the disclosure of their identifying information, but moving for a protective order is not one of them. While Movant's could have had their concerns addressed in the appropriate district, they utterly failed to do so. In so failing, they now ask the Court to break the Federal Rules of Civil Procedure for them. The Court should not grant them this relief especially considering they have no right to present such arguments in this Court.

Further, Movants request that the Court to reconsider its March 19 order (ECF No. 9) and argue that "the court erred in finding that Plaintiff had demonstrated good cause to obtain expedited discovery of Movant's personal information." (ECF Nos. 12-1 at 7; 14-1 at 7.) This request is a motion for reconsideration in disguise and is granted only in extreme circumstances. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (explaining that a motion for reconsideration "should not be granted, absent highly unusual circumstances, unless the

district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.") The overwhelming majority of district courts, including courts in this district, presented with similar applications, have granted similar discovery requests. *See e.g.*, *Pacific Century International, LTD v. John Doe*, No. 12-3479 (E.D. Cal. Jan 19, 2012), ECF No. 9 (granting discovery for the identifying information of John Doe and his joint tortfeasors); *Millennium TGA, Inc. v. John Doe*, No. 11-4501 (S.D. Tex. Feb. 9, 2012), ECF No. 6 (same); *First Time Videos LLC v. John Doe*, No. 11-00690 (E.D. Va. Jan. 9, 2012), ECF No. 8 (same). Movants are not allowed to move for reconsideration of a decision simply because they disagree with the outcome. *See Nunes v. Ashcroft*, 375 F.3d 805, 810 (9th Cir. 2003) Here, the Court's decision was consistent with the majority view on this issue. Reconsideration is not warranted.

## 2.     **RELEVANCE**

**Movant's Position:**

"The foremost fundamental principal regarding subpoenaed discovery is that a subpoena duces tecum to obtain materials in advance of trial should be issued only when the party seeking the materials can show that the materials are evidentiary and relevant." *Straily v. UBS Fin. Servs., Inc.,* 2008 WL 5378148, at *1. Indeed, Rule 26(b) specifically states that "Parties may obtain discovery regarding any nonprivileged matter that is relevant…" Fed. R. Civ. P. 26(b). Although relevance, as used in Rule 26 is broad, it is not limitless. Moreover, "a court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund, Inc. v. Sanders* 437 U.S. 340, 353 (1978). "When the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Id.*

Movants, and approximately 116 other unrelated individuals are referred throughout Plaintiff's filings as John Doe's "Co-Conspirators." **Plaintiff has not alleged that Movant ever interacted with John Doe at any point to share the allegedly copyrighted work that is the subject of this action.** Indeed, there is also no allegation that any particular "co-conspirators" connected to each other and shared the work. The only commonality is that each "co-

conspirator" is accused of downloading the same work.   Simply calling an individual a co-conspirator should not suffice to create a relationship where one would not otherwise exist.

The plaintiff's request for identical co-conspirator discovery was denied for this reason in two *First Time Video, LLC v. Unknown* cases in this district (Nos. 2:11-cv-03478 and 2:12-cv-00621), which also involved Plaintiff's counsel herein.   After a detailed discussion of the appropriate standards for early discovery, the court held that Plaintiff

> …has not shown good cause to conduct expedited discovery regarding John Doe's alleged co-conspirators, whom plaintiff has not alleged as defendants in the amended complaint (naming only one doe defendant, John Doe, and asserting the plaintiff will "seek leave of the court to amend this complaint to joining John Doe's co-conspirators as defendants"…[B]ecause plaintiff's complaint does not purport to sue John Doe's alleged "co-conspirators" at this time, in light of the potential that some of the alleged co-conspirators are innocent internet users, plaintiff has not shown that the need to discovery their identities at this early stage outweighs the prejudice to those individuals, or that the request to subpoena all of those individuals' ISPs is reasonable at this time, in light of all the surrounding circumstances."

*First Time Videos, LLC v. Doe*  No. 2:11-cv-3478-GEB-EFD (Doc. 9) at 5-6, 2012 WL 170167, at *3.  See also *First Time Videos, LLC. v. Doe,* No. 2:12-cv-00621 (Doc. 8, filed April 18, 2012).

In particular, the court noted that Paragraph 27 of the Hansmeier Declaration in Support of Ex Parte Discovery (which was identical to ¶27 of the Hansmeier Declaration in the instant case) stated only that the declarant personally observed John Doe's IP address participating in a swarm that the alleged co-conspirators also joined at some other time.  The court was particularly concerned with the fact that, like here, Plaintiff could only alleged that "any (or all of the) individual IP address(es) listed on Exhibit A of the Amended Complaint **could have** aided John Doe." (Doc 1-1 at ¶ 27)(emphasis added).  Plaintiff's technician offers no hint that any particular "co-conspirator" actually did connect with John Doe, only that they *could have*.  As in, it is not technically impossible (despite the clear evidence that Movant, and most other co-conspirators, allegedly downloaded the work weeks apart from John Doe).  What Mr. Hansmeier fails to mention is that it is also possible that *none* of the "co-conspirators" ever connected to John Doe,

or that *countless* other individuals, who are not identified as co-conspirators, could have connected to John Doe to provide or receive Plaintiff's work.

Examining the evidence in support of Plaintiff's discovery request, makes it appear exceedingly unlikely, in fact, that Movants, (or the majority of "co-conspirators" chosen for this case), ever interacted in any way with John Doe or with each other.  Movants are alleged to have been observed on January 9th and January 20th, 2012, each over a month after John Doe's alleged participation on December 2, 2011.  Plaintiff glosses over the obvious problems with this and makes no attempt to show any chain of interaction or distribution, from co-conspirator 1, for example, to John Doe, or from John Doe to subsequent "co-conspirators."  Instead, Plaintiff's opposition states

> "Movant makes several arguments on the merits stating that John Doe and his co-conspirators did not interact with one another.  These arguments are premature and should be raised only if and when Movant is named and served in this case.  The legal merits of the case have nothing to do with whether or not Plaintiff's subpoena causes "annoyance, embarrassment, oppression, or undue burden or expense as required by Rule 26(c)" (Doc. 20 at pg. 6).

First, Plaintiff mischaracterizes Movants' argument as relating to the "merits" of his claim against John Doe and/or the requirements of Rule 26, rather than the relevance of the requested discovery.  Second, Plaintiff simply asserts that by characterizing the argument in this way it is premature to consider whether the John Doe actually connected to any co-conspirator herein ever connected to John Doe.  Finally, Plaintiff would have you believe that the fact that the underlying action has no merit is irrelevant to whether the discovery requested in connection with that action would subject one to annoyance, embarrassment, or undue burden.

The response above is telling.  Obviously, Plaintiff is unable to provide any support for the proposition that John Doe actually connected to Movants herein, and has not tried to do so.  Plaintiff is well aware that the evidence actually shows the Movants' IP addresses in the swarm a full month or more after John Doe.  Moreover, Plaintiff cannot plausibly argue that the name, addresses, and telephone numbers of individuals that never interacted with John Doe in any manner are relevant to this action against John Doe.  Instead, Plaintiff has chosen a third course,

and the only one available to it.  Plaintiff therefore begs this court to pay no attention to the fact that Plaintiff's own evidence shows that Movant and John Doe did not interact.

Plaintiff's remaining arguments supporting the relevance of its requested discovery are likewise unpersuasive.  Plaintiff asserts that without the identifying information of alleged co-conspirators, "Plaintiff will have no means of computing the damages" from John Doe's infringement.  Plaintiff offers no hint as to how these damages would be computed, and its selection of "Co-Conspirators" makes it clear that Plaintiff's motive for discovery has nothing to do with "computing damages."  As noted above, Plaintiff has not alleged (and presumably has no basis to allege) that Movant has ever interacted with John Doe, either to provide John Doe with a file or to receive a file from John Doe.  It seems quite unlikely then that the identifying information of Movant is therefore necessary to compute damages attributed to the allegations against John Doe.

It is also instructive to ask who <u>has not</u> been included as a "co-conspirator" in the instant suit – namely anyone that resides outside of California.  The swarm that John Doe allegedly participated in almost certainly included individuals from various states in the U.S. and perhaps many countries worldwide.  Nowhere has Plaintiff alleged that the swarm sharing Plaintiff's file only included the California residents chosen as "co-conspirators" for this suit.  Indeed, as Plaintiff's complaint alleges, "A swarm will commonly have peers from many, if not every, state in the United States and several countries around the world…" (Doc.1 at ¶15).  Thus, it is extremely likely that the majority of participants in the chosen swarm will not be identified by the requested discovery and it is also extremely likely that the individuals that John Doe *actually* connected with are not listed as "co-conspirators" in the instant suit.

Obviously, a true computation of the damages attributed to John Doe (if that's what Plaintiff wanted) would require the inclusion of those individuals that actually connected to John Doe to share the work, whether or not they lived in California.  A true computation of damages would likewise require the exclusion of individuals, like Movant, that likely never interacted with John Doe.  Instead, Plaintiff has selected a random group of California residents that are

alleged only to have downloaded the same work in the same way (though not necessarily from each other), and chosen to label them co-conspirators.

The Southern District of California issued an order on May 21, 2012 that examined an Ex Parte Application by Mr. Gibbs that provided precisely the same rationales for discovery as those posited herein.  In denying Plaintiff's request, the Court noted the following:

> "Plaintiff claims that there is a substantial need for the expedited discovery because damages cannot be established against Defendant without gathering evidence of and from individuals with the IP addresses listed in Exhibit A. "Without determining these identities Plaintiff will have no means of computing the damages that can be attributed to [Defendant's] infringing activities.  When this information is erased, Plaintiff will have no ability to identify [Defendant's] joint tortfeasors, and thus will be unable to determine damages related to its copyright infringement claims."   But, while Plaintiff's Ex Parte Application stresses the need for this information in order to assess damages, the Court is left puzzled by the obvious – an explanation regarding why the identities of the IP subscribers are necessary to assess damages when the extent of the alleged infringing activity is captured in full in Exhibit A.  Plaintiff fails to adequately explain, or even attempt to explain, its reasoning and the Court is left to make that connection on its own, and is unable to do so...If Plaintiff's true reason for requesting expedited discovery is to assess damages, the Court finds that the thousands of IP addresses, complete with dates and times of each alleged copyright infringement activity, should be sufficient to calculate such damages. The Court is at a loss to understand how names, addresses, phone numbers and email addresses connected to each IP address listed in Exhibit A could possibly assist Plaintiff in a computation of damages against Defendant."

*Millenium TGA, Inc. v. Paschall,* 2012 WL 1836331 at * 1-2 (S.D. Cal. May 21, 2012).

The Southern District's analysis applies equally to Plaintiff's other justification, that the identity of Movant is necessary to establish contributory liability against John Doe.  A cause of action for contributory infringement against John Doe requires that John Doe "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another."  See, e.g. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971).    Two aspects of this definition are important.  First, there is no requirement that Plaintiff identify specific individuals that were allegedly on the "receiving end" of John Doe's contributory infringement.  Plaintiff must only establish that there were additional infringements "by another."  This does not require the Movants' addresses, phone numbers,

email addresses, or any of the other requested information.  Indeed, if Plaintiff's proffered evidence is to be believed, it already has evidence of the infringements - just does not the identity of the infringers.

The second (extremely important) component of contributory infringement is that John Doe must have induced, caused, or materially contributed to the infringing conduct of another. Since Plaintiff is totally unable to even *allege* that Movants interacted with John Doe at any time, Plaintiff cannot seek to base John Doe's contributory infringement on an alleged direct infringement by Movants.  As such, this justification for the relevance of the requested discovery must also be dismissed.

Plaintiff finally attempts to justify its inclusion of approximately 116 alleged co-conspirators by including a single sentence in the Amended Complaint that "Plaintiff intends to seek leave of the Court to amend this complaint to join John Doe's co-conspirators as defendants in this action pursuant to Fed. R. Civ. P. 20(a)(2)."  (Doc. 6 at ¶ 44).  Although this hints at the true reason for the Amended Complaint's "co-conspirators," it doesn't tell the entire story.

The simple fact is that the complaint's structure (single John Doe + co-conspirators) is the result of multiple District Courts rejecting exactly the type of joinder that plaintiff refers in support of its discovery request.  A look at *Millennium TGA, Inc v. Does 1-939* is particularly instructive.

On December 7, 2012, Prenda Law, Inc. filed *Millennium TGA v. Does 1-939,* No. 1:11-cv-2176-RLW (D.D.C.) in the District of Colombia, alleging copyright infringement against 939 John Does identified by IP address.  This case was voluntarily dismissed by the Plaintiff after it was assigned to Judge Wilkins, who had previously denied a Plaintiff's motion to engage in identical ISP discovery in *Nu Image, Inc. v. Does 1-23,* 799 F.Supp.2d 34 (D.D.C. 2011).  After this "voluntary" dismissal, Plaintiff subsequently refiled essentially the same complaint against the same 939 IP addresses in the Southern District of Texas, with one instructive difference.  In *Millennium TGA, Inc., v. John Doe,* No. 4:11-cv-4501-VG (S.D. Tex, filed Dec. 20, 2012) Plaintiff ostensibly filed suit against a single John Doe, and identified the remaining 938 IP addresses as co-conspirators, as Plaintiff has done in the instant case.  *These were the exact same*

*individuals, though now they are "co-conspirators"* and Plaintiff forwarded substantially the same arguments justifying co-conspirator discovery as they have here.  Although this case is cited as an example of the propriety of this type of co-conspirator discovery by Plaintiff, Comcast objected to Plaintiff's subpoena seeking co-conspirator identity.  On June 25, 2012, the District Court for the District of Colombia denied Plaintiff's attempt to compel Comcast's compliance with the subpoena, stating that "As to the 350 Comcast subscribers who are linked to alleged "co-conspirators" of Doe, the Court also denies the request for identifying information as unduly burdensome."  *Millennium TGA, Inc. v. Comcast Cable Communications, LLC,* Misc. Action No. 12-mc-00150(RLW), at page 12.   A copy of this decision is annexed hereto as Exhibit B.

     As above, the complaint in the instant case is a transparent attempt to harvest vast numbers of ISP subscriber identities without having to deal with the issue of joinder – an issue that has led to the dismissal of literally thousands of Doe Defendants throughout the country in similar BitTorrent litigation.[1]

     In addition to the multitude of cited decisions rejecting joinder of individuals based solely on the allegation that they downloaded the same work from the same swarm, one decision from the District of Arizona is particularly instructive.  In *Patrick Collins v. Does 1-54*, No. 2:11-cv-01602; 2012 WL 911432  (D. Ariz. 2012), a BitTorrent copyright case like the instant matter, the court faced a situation where only two defendants remained in the action.  The court, after a thorough discussion of the joinder rules, determined that <u>the joinder of even two individuals</u>

---

[1]  See, e.g. *SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620 (N.D. Cal. Nov. 30, 2011)(dismissing all but Doe 1); *AF Holdings LLC v. Does 1-97*, 2011 WL 2912909 (N.D. Cal. July 20, 2011) (same*); Pac. Century Int'l Ltd. v. Does 1-101*, 2011 WL 2690142 (N.D. Cal. July 8,2011) (same). In re: BitTorrent Adult Film Copyright Infringement Cases, No. 2:11-cv-3995-DRH-GRB (E.D.N.Y. May 1, 2012); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fla. 2011) (severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.D.R. 669 (S.D. Fla. 2011) (severing defendants); *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939, slip op., 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (order severing defendants); *Patrick Collins, Inc. v. Does 1-35*, No. 1:11-CV-02940 (N.D. Ga. Dec. 19, 2011) (order severing defendants); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-2941-CAP (N.D. Ga. Dec. 5, 2011) (order severing defendants); Third Degree Films v. Does 1-3577, No. C11-02768 LB, slip op., 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:11-CV-345, slip op., 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (severing defendants*); K-Beech, Inc. v. Does 1-78*, No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011) (order severing defendants).

based solely on the allegation that they participated in the same swarm was improper.   The

court's reasoning is persuasive.  It stated that:

> "Plaintiff alleges that the two remaining Defendants 'participat[ed] in a BitTorrent swarm with other infringers' but does not claim that John Doe 6 provided data to the former John Doe 12, or vice versa.  Plaintiff included as Defendants only those IP addresses from the swarm in question that were located in Arizona, demonstrating that the actions of the individual members of the swarm are easily distinguishable.  Plaintiff alleges no facts that these two particular Defendants shared data with each other, and provides data instead that they were logged on to BitTorrent weeks apart."

*Patrick Collins, Inc. v. Does 1-54,* 2012 WL 911432 at *5 (D. Ariz. 2012).  In accordance with

this reasoning, the court held that "Plaintiff has not demonstrated that John Doe 6 and the former

John Doe 12 engaged in a single transaction or occurrence..." and therefore severed John Doe 6.

(Id.).  As the foregoing examples illustrate, it is very unlikely that Plaintiff will ever successfully

join multiple parties in this suit, and the simple statement that it will seek leave to do so is not

sufficient to make the identities of Movant (or other "co-conspirators") relevant to the instant

matter.


**Plaintiff's Position:**

This issue was already fully covered at oral argument in the previous case in front of this

Court.   The information is relevant as explained to the Court.

Movants argues that "Plaintiff's requested discovery seeks to discover the identities of

individuals that lack any connection whatsoever to the single John Doe that is being sued in the

instant matter." (ECF Nos. 12-1 at 10; 14-1 at 10.) This argument is unfounded. The purpose of

seeking John Doe's joint tortfeasors' identities is, *inter alia*, to establish contributory liability

against John Doe and any later-joined parties for the infringing acts of the joint tortfeasors. *See*

*Sony v. Universal City Studios, Inc.,* 464 U.S. 417, 435 (1984) ("[T]he concept of contributory

infringement is merely a species of the broader problem of identifying the circumstances in

which it is just to hold one individual accountable for the actions of another.")  In order to prove

contributory infringement against a Doe Defendant and any later-joined parties, a plaintiff must

prove   underlying   direct   infringements.   *Cable/Home   Communication   Corp.   v.   Network*

*Productions, Inc.*, 902 F.2d 829, 846 (11th Cir. 1990) ("Contributory infringement necessarily must follow a finding of direct or primary infringement.")

Just as it is necessary to ascertain the John Doe's identity in order to prove his direct infringement, so too is it necessary to ascertain the joint tortfeasors' identities to prove their direct infringement. *Id.* Plaintiff will have no means of seeking information from a joint tortfeasor, examining digital forensic evidence or assessing the range of possible defenses that a joint tortfeasor might raise without first knowing who he is. *See, e.g., First Time Videos LLC v. John Doe*, No. 11-00690 (E.D. Va. Jan. 4, 2012), ECF No. 7 at 4 ("Further, without these identities Plaintiff will have no means of computing the damages that can be attributed to the conspiracy or establishing testimony from coconspirators to aid in proving liability against John Doe and any co conspirators who are later joined to this action.") This, of course, is only one of many grounds for establishing the relevance of the joint tortfeasors' identities to Plaintiff's claims. For example, Plaintiff would have no sense of the extent of damages caused by a joint tortfeasor's infringement unless it had an opportunity to examine digital forensic evidence that is in the sole possession of that individual.

Contributory infringement is a plausible legal theory in BitTorrent-based copyright infringement cases. Courts have already ruled that using BitTorrent to commit copyright infringement triggers contributory infringement liability. *Raw Films, Ltd. v. John Does 1-11*, No. 12cv368-WQH (NLS), 2012 WL 684763, at *2 (S.D. Cal. Mar. 2, 2012) ("Plaintiff's allegation that each defendant was willingly and knowingly a part of the 'swarm' for purposes of the infringing conduct supports Plaintiff's claim of contributory infringement."); *Liberty Media Holdings, LLC v. Does 1-62*, No. 11-CV-575, 2011 WL 6934460, at *1 (S.D. Cal. Dec. 30, 2011) ("Defendant's conduct constitutes contributory infringement of Plaintiff's copyright in addition to direct infringement under 17 U.S.C. § 501."); *Liberty Media Holdings, LLC v. Swarm of November 16, 2010, Sharing Hash File A3E6F65F2E3D672400A5908F64ED55B66A0880B8*, No. 11-619, 2011 WL 1597495, at *3 (S.D. Cal. Apr. 26, 2011) ("Plaintiff has alleged the prima

facie elements of both direct and contributory copyright infringement . . . .”). The information sought in Plaintiff's subpoenas is, therefore, highly relevant to the instant case.

Further, Movants attached declarations of Diona Atkins, an individual with no connection to the instant case. (ECF Nos. 12-2; 14-2.) Movants accuse Plaintiff of “threaten[ing] and harass[ing] those subscribers with future litigation unless the subscriber pays demanded sum.” (ECF Nos. 12-1 at 11; 14-1 at 11.) Ms. Atkins declaration paints a different picture, however, as she explains that she has received a single letter from Plaintiff's counsel and has “received no other communications from Prenda Law, Inc. of any kind . . . .” (ECF Nos. 12-2 ¶ 6; 14-2 ¶ 6.) It is difficult to make the claim of threats and harassment with respect to the issuance of a single formal letter setting forth basic demands.

Finally, Movants make several arguments on the merits, discussing issues like interaction within a swarm, joinder, and damage computation. (ECF No. 12-1 at 11-16; 14-1 at 12-17.) These arguments are premature and should be raised only if and when Movants are named and served in this case. *Hard Drive Productions, Inc. v. Does 1-118*, No. 11-1567 (N.D. Cal. Nov. 8, 2011), ECF No. 28 at *5-6 (“While these may have merit, they are for another day.”) The legal merits of the case have nothing to do with whether or not Plaintiff's subpoena causes “annoyance, embarrassment, oppression, or undue burden or expense” as required by Rule 26(c).

### 3.  Capability of Identifying the Infringer of Plaintiff's Copyright Via the Requested Discovery

**Movant's Position:**

It is becoming accepted wisdom in District Courts across the country that an IP address does not equate to the infringer of a Plaintiff's copyright, and merely identifying the individual that pays the internet bill associated with a particular IP address does not identify the individual that infringed a copyright via that IP address.  As the court in *SBO Pictures, Inc.* understood, “the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the internet connection for illicit purposes. *SBO Pictures, Inc.*, 2011 WL 6002620, at *3;

Another court noted that:

> "In its motion, Plaintiff redefines "Defendants" in a manner that would ensnare unknown numbers of innocent individuals or entities into this matter. Tucked away in a footnote, Plaintiff discreetly attempts to expand "Defendants" for purposes of this expedited discovery request to encompass not only those who allegedly committed copyright infringement – proper defendants to Plaintiff's claims – but ISP "Subscriber(s)" over whose internet connection the Work allegedly was downloaded."

*Pacific Century International, Ltd., v. Does 1-101* No. C-11-02533, 2011 WL 5117424 at *2 (N.D. Cal. Oct. 27, 2011).

Plaintiff's present counsel has all but admitted that the requested discovery cannot identify the individual who infringed Plaintiff's copyright. Mr. Gibbs, attorney for Plaintiff herein, also represented the plaintiff in Boy Racer v. Does 1-52. The presiding judge in that matter severed Does 2-52, but granted expedited discovery as to John Doe #1. Plaintiff received precisely the ISP subscriber information requested herein.

As described by Judge Grewal:

> "To the court's surprise, in its filing and oral argument to the court, Boy Racer admitted that, its previous representations notwithstanding, the subpoenas were not sufficient to "fully identify" "each P2P network user suspected of violating the plaintiff's copyright." Instead, it revealed for the first time that still more discovery was required. **Boy Racer would require nothing less than an inspection of the subscriber's electronically stored information and tangible things, including each of the subscriber's computer and the computers of those sharing his network."**

*Boy Racer, Inc. v. Does 1-52,* 2011 WL 7402999 (N.D. Cal. 2011) (emphasis added). The requested discovery herein is likewise limited to the name and identifying information of an ISP subscriber. If the requested discovery could not tell Plaintiff who the defendant was in Boy Racer, it is inconceivable that the same information from Movant would be necessary or sufficient to identify the <u>wholly unrelated</u> John Doe sued herein. Moreover, if, in reality, Plaintiff needs nothing less than an inspection of each co-conspirators electronically stored information and tangible things, this court should consider this fact in evaluating the potential prejudice or burden to the unnamed "co-conspirators."

Judge Lloyd in the Northern District of California recently denied Mr. Gibbs request for expedited discovery based on the fact that the requested discovery was not likely to identify the actual infringer of Plaintiff's copyright.  Plaintiff filed an application for reconsideration, which was denied by Judge Lloyd with the following observation: "The papers submitted by plaintiff and the statements by plaintiff's counsel at the hearing on plaintiff's application for early discovery make it **clear** that granting the sought-after discovery **would not uncover the identities** of the infringers." *Hard Drive Productions v. John Doe 1-90,* 5:11-cv-03825, (Doc. 21 at pg. 2)(emphasis in original).  A copy of this decision is annexed hereto as Exhibit C.

**Plaintiff's Position:**

Again, this was covered at the previous hearing in front of this Court.  Movants argue that "an IP address does not equate to the infringer of a Plaintiff's copyright and merely identifying the individual that pays the internet bill associated with a particular IP address does not identify the individual that infringed a copyright via that IP address." (ECF Nos. 12-1 at 17; 14-1 at 17.) Movants are, of course, correct. Determining the identities of the account holders of the IP addresses associated with the infringing activity, however, is an *essential* first step to identifying the actual infringers. Even if the account holders are not the infringers, they are the only persons accessible to Plaintiff that would be able to lead Plaintiff to the true infringer. An informal meet and confer with an account holder is often sufficient to determine whether or not the account holder is the infringer, and, if not, who the actual infringer is. Without this initial identifying information Plaintiff would be unable to identify anyone that infringed on its copyrighted work and would be unable to proceed with its claims in this action.

**4.  Whether Movant Satisfies the Rule 26 Standards for Granting a Protective Order**
**Movant's Position:**

Rule 26 allows this court to issue a protective order to prevent annoyance, embarrassment, oppression, and undue burden or expense.  Indeed, the "[d]iscovery restrictions

may be even broader where the target is a non-party. *Dart Indus. Co. v. Westwood Chemical Co.,* 649 F.2d 646, 649 (9th Cir. 1980).

Annoyance, embarrassment, and undue burden and expense represent precisely the weapons that Plaintiff relies upon to secure "settlements" in these mass copyright infringement actions. Indeed, as described by Judge Beeler in the Northern District of California,

> "once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand…the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle…Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers."

*MCGIP v. Does 1-149,* No. C-11-02331, 2011 WL 4352110 at *4 (N.D. Cal., Sept. 16, 2011)(emphasis added). See also *On the Cheap, LLC v. Does 1-5011,* No. 10-4472, 2011 WL 4018258, at *11 (N.D. Cal. Sept. 6, 2011)(stating that plaintiffs' settlement tactics leave subscribers with "a decision to either accept plaintiff's demand or incur significant expense to defend themselves" and finding that this does not "comport with the 'principles of fundamental fairness'"). Other courts have recognized that

> "[p]laintiff would likely send settlement demands to the individuals whom the ISP identified as the IP subscriber. 'That individual – whether guilty of copyright infringement or not- would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the settlement demand. **This creates great potential for a coercive and unjust settlement.'"**

*SBO Pictures, Inc. v. Does 1-3036* 2011 WL 6002620 at *3 (quoting *Hard Drive Prods.,* 2011 WL 5573960 at *3)(emphasis added).

Alleged "co-conspirators" can expect to face exactly the same regimen of threatening letters, phone calls, and other unwanted communications from Plaintiff. The declaration of Diona Atkins, annexed hereto as Exhibit D makes this abundantly clear. Ms. Atkins states that she was immediately contacted by Plaintiff's counsel with a settlement demand after her

identifying information was revealed.   Plaintiff made no request for information regarding damages, or the identity of John Doe, or anything else resembling the reasons given in Plaintiff's request for expedited discovery.   A copy of this declaration and the demand letter are annexed hereto collectively as Exhibit D.

As noted above, the Southern District was "at a loss" to understand how the requested names, addresses, and telephone numbers were relevant to Plaintiff's case against the sole named defendant.  Indeed, *it is* hard to understand how this information is relevant to the purposes cited by Plaintiff.   Occam's Razor is a principle that states that when one must chose among competing hypotheses, one should select that one which makes the fewest assumptions and thereby offers the simplest explanation of the effect.  Applying this principle to the instant case, it becomes much easier to understand why Plaintiff has sought the names, addresses, and telephone numbers of countless individuals who have no apparent connection to the John Doe being sued.

Simply put, the requested information is precisely the type of information that Plaintiff needs to send demand letters threatening a federal pornography lawsuit unless the subscriber (not the infringer) pay Plaintiff thousands of dollars, and then follow-up with harassing phone calls further threatening litigation unless the subscriber settles.

It is further telling that, as described in the original motion, Plaintiff has variously employed several different methods/proposed justification for its discovery requests, but the requested discovery is always the same: names, addresses, phone numbers, etc.   This is true whether Plaintiff has included the subscriber as a Doe, has identified the subscriber as a "co-conspirator" or whether Plaintiff has sought the information through an attempt at a Rule 27 petition.

Plaintiff attempts to downplay this fear, and notes that they only got around to sending a single demand letter to Ms. Atkins, which therefore didn't burden her at all.  What Plaintiff fails to mention, however, is that Ms. Atkins then retained present counsel and Plaintiff was therefore unable to contact her any further.  Had she not retained (and paid) counsel, she undoubtedly

would have been subjected to the same regimen of letters and phone calls to which each John Doe (or "co-conspirator") is subjected.

Finally, Plaintiff's counsel has admitted that this initial discovery request is only the tip of the iceberg, and that Movant should expect significant further discovery.   Plaintiff's opposition specifically states that without the discovery, Plaintiff will have no means "of seeking information from a joint tortfeasor, *examining digital forensic evidence,* or assessing the range of possible defenses" that a subscriber might have.  Doc. 20 at pg. 5.  As Judge Grewal noted above, to even identify whether a particular subscriber is an actual infringer, Plaintiff will need to conduct intrusive digital investigation of every device in the subscriber's home that is remotely capable of connecting to the internet (and perhaps those of subscribers neighbors, family, visitors, and anyone else that has *ever* connected to the subscriber's network).  This is obviously an oppressive (and expensive) request that would subject anyone to substantial burden. This burden is clearly "undue" in light of the lack of relevance that the information would have to the instant suit.

**Plaintiff's Position**:

Yet again, this was previously addressed in a hearing before this Court in a case with virtually identical circumstances.  Movants' final argument is that the Court should "issue a protective order to prevent annoyance, embarrassment, oppression, and undue burden or expense." (ECF Nos. 12-1 at 18; 14-1 at 18.) The "annoyance and embarrassment" referred to in Rule 26 is not the annoyance of having to defend oneself in court; it is the annoyance and embarrassment associated with responding to a subpoena. *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982) (explaining that a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, *or undue burden or expense*" experienced from a subpoena). Movants, however, are not subject to Plaintiff's subpoenas and are not required to respond to them in anyway. Thus, Movants do not face any "annoyance, embarrassment, oppression, or undue burden or expense" from any of Plaintiff's discovery requests. *See Voltage Pictures, LLC v. Does 1–5,000*, No. 10-0873, 2011 WL 1807438, at *4 (D.D.C. May 12, 2011) (denying motions for protective orders

from thirty-five anonymous movants); *MCGIP, LLC v. Does 1–14*, No. 11-2887 (N.D. Ill. July 26, 2011), ECF No. 19 (finding that movants had "failed to show good cause" for an order under Fed. R. Civ. P. 26(c)(1)). Movants cite cases that have raised concerns about lawsuits involving sexually explicit materials. (ECF Nos. 12-1 at 18-19; 14-1 at 19-20.) However, none of these cases involve the issuance of a protective order preventing discovery of identifying information. (ECF Nos. 12-1 at 18-19; 14-1 at 19-20.) Movants have cited no authority for the proposition that someone not subject to a subpoena faces any "annoyance, embarrassment, oppression, or undue burden or expense" from that subpoena. (*See generally* ECF Nos. 12-1; 14-1.) Movants' request for a protective order must be denied.

///

///

///

///

///

Respectfully Submitted,

June 28, 2012


__/S/ Nicholas Ranallo_____
COUNSEL FOR MOVANT (IP ADDRESS 96.41.117.43)
Nicholas Ranallo, Attorney at Law
California Bar # 275016
371 Dogwood Way,
Boulder Creek, CA 95006
(831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com


 _/s/ Brett L. Gibbs_____
Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this28th day of June, 2012, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

By:____/s/Nicholas Ranallo

Nicholas Ranallo